IN RE INTEREST OF S.P., N.P., AND L.P., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. C.P., APPELLANT.

375 N.W.2d 616

Filed November 1, 1985.   No. 84-726.

Robert C. McGowan, Jr., for appellant.

Donald L. Knowles, Douglas County Attorney, and Elizabeth G. Crnkovich, for appellee.

Steven M. Lathrop, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an appeal from the decree of the separate juvenile court of Douglas County which terminated the parental rights of C.P. to her three female children, S., age 12, N., age 10, and L., age 4. We affirm.

The children are all born out of wedlock. The mother and her children first became involved with the juvenile court with the filing of a petition on October 23, 1981. By her admission, the mother admitted that the children lacked proper parental care by reason of the faults or habits of the mother in that the mother had failed to provide a permanent and stable residence for herself and said children. Neb. Rev. Stat. § 43-202(2)(b) (Reissue 1978).

Following a February 10, 1982, disposition hearing, at which C.P. and her attorney were present, S. was placed in the temporary custody of the Douglas County Social Services, and the other two children in the temporary custody of the State of Nebraska Department of Public Welfare. In addition, C.P. was ordered to comply with a plan of rehabilitation which included participation in a credit program, individual counseling,

maintenance of permanent and stable housing, participation in the Visiting Nurses Association program, and compliance with a regular schedule of visitation with her children. Later on in the year 1982, C.P. was ordered to enter treatment and obtain counseling for alcoholism.

Review hearings were held on seven different dates in 1982 and 1983. A motion for termination of parental rights was filed on March 30, 1984, pursuant to Neb. Rev. Stat. § 43-292(6) (Reissue 1984), and following extended hearings covering 5 different days, an order sustaining the motion was entered by the juvenile court on August 1, 1984. On her appeal C.P. assigns a single error, that the court erred in finding the best interests of the children required termination of parental rights.

The record is long and frustrating. C.P. had lived at seven different addresses in a period of just over a year. She served eight jail terms from 1981 to July of 1984 for offenses including shoplifting, stealing, and solicitation of prostitution.

C.P.'s lack of success in the area of alcoholism treatment is no less dismaying. She apparently fabricated a story about having received inpatient treatment at the Hastings Regional Center. She was admitted for inpatient treatment at St. Gabriel's Center in January of 1983, but left against the advice of her counselors and without completing the program. Upon readmission in May she completed the program, but, contrary to the advice given her, she attended but a couple of Alcoholics Anonymous meetings and then apparently lost interest. She has continued to drink. There was an attempt to have her admitted to St. Gabriel's for a third time, but the administration insisted that "she had all the tools" they could give her.

The record would disclose that C.P. has made no real progress with her drinking problem, with establishing a stable home, with obtaining employment, or with sharpening her parenting skills. Each review hearing has been a succession of threats, admonitions, and entreaties on the part of the court, and promises made and not kept by C.P.

We do not agree with C.P.'s argument that the State must show some harm to the children before it can be said to be in the best interests of the children to terminate parental rights. The court need not await certain disaster to come into fruition

before taking protective steps in the interest of a minor child.

A practical program of parental rehabilitation should not be viewed as our system's indulgent toleration of an otherwise intolerable situation. *A parent afforded a program of rehabilitation must realize that the courts will examine a pattern of parental conduct in determining an appropriate disposition for the best interests of a child.* In cases such as this the past is an indication of the future. Failure of a parent's good faith effort toward rehabilitation to correct a situation injurious to the life and normal development of a child may cause a court to conclude that a parent's past offers no future for the child.

. . . To now leave the child in foster care for an indefinite period would be patently unfair to him, and would only continue the emotional problems attendant to a "temporary" custody situation. A child cannot be left suspended in foster care, and should not be required to exist in a wholly inadequate home. Further, a child cannot be made to await uncertain parental maturity.

(Emphasis supplied.) *In re Interest of D.*, 218 Neb. 23, 28-29, 352 N.W.2d 566, 570 (1984).

Three years is long enough. From a de novo review of the record, we conclude that the time for further experimentation has ended. We agree with the juvenile court that the evidence is clear and convincing that it is in the best interests of the minor children that the parental rights of their mother be terminated. Its judgment is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority opinion in this case. While I acknowledge that this is a difficult and sad situation, I do not believe that it is established by clear and convincing evidence that the children lack proper parental care by reason of the faults or habits of the mother as required by Neb. Rev. Stat. § 43-202(2)(b) (Reissue 1978). I acknowledge that the appellant has not been able to comply with the plan of rehabilitation. I suggest, however, that the plan in this case was not realistic. The mother in this case is a poor, uneducated alcoholic. Persons who are as untrained as the

appellant have difficulty obtaining employment, particularly at a time when many Americans, better trained, are unemployed. And, if unemployed, she will likewise have difficulty obtaining permanent housing. Moreover, as an alcoholic, she cannot "cure" herself merely by wishing to do so. I simply do not believe that it is appropriate for courts to rearrange families on the basis that by terminating parental rights a child may thereby be adopted by a "better" family. I would have reversed.